UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Paul Kowalski, Jr.,

                              Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-1447 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 5, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 8.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, the assessment of plaintiff's mental functioning draws the Court's immediate attention. The ALJ found that plaintiff had the severe impairments of major depressive disorder; panic disorder; anxiety; PTSD; and postural vertigo. [26.] The ALJ later found that plaintiff was capable of sedentary work with certain physical limitations and the following nonexertional limitations: "He is limited to simple, routine tasks, to simple work-related decisions, and to minimal changes in work routines and processes. He is limited to frequent interaction with supervisors, coworkers, and the public." [28.] Plaintiff argues that the ALJ did not adequately explain the nonexertional limitations, because "[n]ot a single opinion rendered by a doctor exists within the evidence of record. Neither a treating source, nor a consultative examiner rendered any opinions on Plaintiff's physical or mental abilities." (Dkt. No. 7-1 at 16; *see also* Dkt. No. 9 at 2.) The lack of an opinion or a medical source statement is particularly important here, according to plaintiff, because of the extensive notations of psychiatric problems throughout the record:

> Moreover, the evidence of record exhibits pretty considerable reports in regards to Plaintiff's mental health. For example, one can plainly see that Plaintiff had issues related to depression, anxiety, and agoraphobia. (*See* Tr. 386, 438, 781-782, 784-787, 788-789, 791-793, 795, 599, 699, 707, 735-738, 746, 749, 755-756, 898). The evidence of record is also full of reports of suicidal thoughts and ideations, suicide attempts, as well as visual and auditory hallucinations. (*See* Tr. 781-782, 784, 720, 738, 749, 750, 755, 598-605). Plaintiff reported that past suicide attempts include use of alcohol, drugs, slashing of arms, and a shot gun, and even a noose. (Tr. 600 ,784). Even more so, on January 18, 2017, Plaintiff was sent to the emergency department due to expressing suicidal ideations to his primary care provider. (Tr. 598-605). As for his relations with other people, Plaintiff stated that when becomes very agitated, he feels like he wants to hurt someone. (Tr. 784). Given all of this evidence and the ALJ's lack of medical expertise, it is not clear how the ALJ was equipped to determine Plaintiff's non-exertional functional abilities in the absence of a medical opinion. *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018); *Salone v. Berryhill*, No. 6:16-CV-06491-

4

MAT, 2018 WL 6333421, at *3 (W.D.N.Y. Dec. 5, 2018). Thus, it is evident that the RFC determination is nothing more than the ALJ's lay interpretation of the record.

(Dkt. No. 7-1 at 18.) The Commissioner responds that plaintiff's spotty psychiatric treatment supports the mild nonexertional limitations in the RFC and renders any testimony to the contrary inconsistent with the overall record:

> Plaintiff points to symptoms of anxiety, depression, agoraphobia and suicidal thoughts to support his claim of disability. P. Mem. 17-18. However, the record does not support an RFC that requires more limitations than simple routine tasks, simple work-related decisions, minimal changes to work routines and processes, and frequent interaction with others (Tr. 24). As the ALJ described in detail, Plaintiff only intermittently sought mental health treatment, and when he did, he was consistently non-compliant for reasons other than agoraphobia (Tr. 24-25, 361-62, 367-38, 374 376, 379, 381-83). Plaintiff's failure to follow recommended treatment is a factor that the ALJ is required to consider in evaluating Plaintiff's symptoms. *See* SSR 16-3p.

(Dkt. No. 8-1 at 9.)

Plaintiff has the better argument. "Courts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Cornell v. Astrue*, No. 7:11-CV-1064 (GTS), 2013 U.S. Dist. LEXIS 9513, at *23 (N.D.N.Y. Jan. 24, 2013) (internal quotation marks and citation omitted). The record contains instances, some of which plaintiff has cited, of multiple psychiatric problems that might have affected plaintiff's ability to follow treatment and his overall mental health profile. Plaintiff has a history of polysubstance abuse [*e.g.*, 343, 389], which possibly would require an analysis under 20 C.F.R. §§ 404.1535(b) or 416.935(b) even if his psychiatric problems were considered disabling. A clinical note from February 13, 2014 indicates that plaintiff has "a history of brain trauma" [409], in whole or in part from a motorcycle accident a few years earlier. In 2012, plaintiff attempted suicide two days after a violent assault. [501.] In 2017, plaintiff reported polysubstance abuse, suicidal thoughts, hallucinations, and a history of multiple past suicide attempts. [604.] That same day, plaintiff's

5

fiancée reported information suggesting that plaintiff possessed a noose and had a plastic sheet lining the floor of his closet. [604.] These citations and others by plaintiff indicate significant psychiatric problems that require further exploration, yet the ALJ chose to emphasize information such as the information from 2017 that plaintiff "had numerous referrals to mental health services, but he had failed to follow through each time, suggesting that prior to this emergency room visit, the claimant's mental health symptoms have not been as severe as alleged." [29.] *Cf. Mnich v. Colvin*, No. 5:14-CV-740 (DNH/CFH), 2015 U.S. Dist. LEXIS 162181, at *93 (N.D.N.Y. Sep. 8, 2015) ("An ALJ is permitted to consider a plaintiff's noncompliance with treatment in weighing the plaintiff's credibility. However, here, there is an indication that plaintiff's mental health impairments had at least some impact on plaintiff's missing appointments. The ALJ did not assess whether this noncompliance could possibly have been caused by plaintiff's mental conditions."). The absence of a medical source statement or other opinion is not automatically fatal to an agency determination, *see Tankisi v. Comm'r*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (summary order), but having that opinion becomes important to resolve discrepancies as large as the ones in this case. *See Swiantek v. Comm'r*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (ALJ affirmed in part because assessment of psychiatric limitations was based on one consultative examination plus "multiple psychological assessments" in the record); *see also Camilo v. Astrue*, 2013 U.S. Dist. LEXIS 148341, at *62 (S.D.N.Y. May 31, 2013) ("However, it is the ALJ's duty to develop the record and resolve any known ambiguities, and that duty is enhanced when the disability in question is a psychiatric impairment.") (citations omitted), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 142999 (Oct. 2, 2013). The Commissioner is not unreasonable in noting frustration with plaintiff's failure to complete questionnaires about daily activities and work history and failure "to attend his own hearing without notifying his counsel, in spite of receiving proper notice of the date and time." (Dkt. No. 8-1 at 12.)

6

Some attempt at a medical opinion still would have been warranted, if only to document continued noncooperation from plaintiff; the Commissioner was too quick to conclude that "it would be unreasonable to believe that Plaintiff would have attended a scheduled consultative examination." (*Id.* at 13.)

There is the additional problem that finances might have affected plaintiff's treatment history. Doctors in late 2014 felt the need to have case management experts talk to plaintiff "about [the] cost of scripts." [359.] A clinical note from June 12, 2015 states explicitly that plaintiff "did not return for a follow-up from his previous evaluation over one year ago due to lack of insurance." [392.] These citations in the record should have sufficed to prompt the ALJ to consider, or at least to rule out explicitly, whether access to necessary services affected plaintiff's treatment history. *See* SSR 16-3p, 2016 WL 1020935, 81 FR 14166-01, at *14170 ("When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."). "It would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000); *accord Burger v. Astrue*, 282 Fed. App'x 883, 884 (2d Cir. 2008) (summary order) ("In this case, however, Burger offered an explanation for her decision to seek only occasional emergency treatment: she was uninsured and could not pay for regular medical care.").

Under these circumstances, remand will be necessary to develop a more complete record about plaintiff's psychiatric limitations. In ordering remand, the Court takes no position on what any medical opinion should say about plaintiff's psychiatric limitations; whether any medical opinion should alter the current RFC; or whether an analysis of polysubstance abuse will become necessary

in the event that plaintiff's psychiatric limitations are considered disabling.  The Court further will not address any of the other issues that the parties have raised.  The Commissioner is free to revisit any other issues as might be appropriate.

**III.    CONCLUSION**

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 8).  The Court grants plaintiff's cross-motion (Dkt. No. 7) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order.  The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: March 16, 2020